# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cv-504-JDR-JFJ

RJY Properties, LLC; RJY Construction, LLC; Robbi Jill Young,

*Plaintiffs*,

*versus*

Energy One Federal Credit Union,

*Defendant*.

## OPINION AND ORDER

Plaintiffs Robbi Jill Young and her two real-estate investment companies, RJY Properties, LLC and RJY Construction, LLC, borrowed over a million dollars from Pearl District Federal Credit Union for property acquisition and development, secured by life insurance policies on Ms. Young. Dkt. 2 at 4-5.[1] The National Credit Union Administration cited Pearl District for making construction loans to Ms. Young in violation of its charter. *Id.* at 6-7. Defendant Energy One Credit Union merged with Pearl District to prevent the latter's forced liquidation. *Id.* at 10. As part of that merger, Energy One and Ms. Young agreed to replace her original debt with new loans secured by her real estate portfolio. *Id.* at 8-10.

Ms. Young and her companies sued Energy One to rescind the collateralization agreement, quiet title to her properties, and assert legal claims for fraud, breach of fiduciary duty, and extortion against Energy One. *Id.* at 12-

---

[1] All citations use CM/ECF pagination.

17. Energy One has moved to dismiss Ms. Young's complaint. Dkt. 17. The Court holds that Ms. Young has not pleaded sufficient facts for any of her claims, and grants Energy One's motion to dismiss without prejudice.

I

To withstand a motion to dismiss under Rule 12(b)(6), Ms. Young's complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In other words, the Court must determine whether, taking all well-pleaded allegations as true, the complaint provides a "reason to believe that [Ms. Young] has a reasonable likelihood of mustering factual support for [her] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

II

Ms. Young is an attorney from Texas who owns two real-estate investment companies, RJY Properties and RJY Construction. Dkt. 2 at 4. These companies own properties in Tulsa and Oklahoma City. *Id.* at 10. To acquire and develop those properties, Ms. Young borrowed $1.2 million from Pearl District in two loans in May of 2022. *Id.* at 4-5. The first loan was to mature on May 5, 2023; the second, on June 30, 2037. *Id.* at 5.

Pearl District's president and board of directors approved both loans. *Id.* Both loans were secured by life insurance policies on Ms. Young that, she alleges, "was a common lending practice for Pearl District for many years." *Id.* at 4-5. After issuing the loans, Pearl District conducted an internal audit using a third-party auditor. *Id.* at 6. The auditor questioned Pearl District's president about the loans' propriety but did not find any wrongdoing. *Id.*

Shortly after the internal audit, the National Credit Union Administration audited Pearl District. *Id.* The NCUA determined that the two loans to

No. 24-cv-504

Ms. Young were not personal loans but construction loans not permitted by Pearl District's charter. *Id.* The NCUA ordered Pearl District to merge with another credit union or face receivership and liquidation. *Id.* at 7.

Energy One reached out to Pearl District in a bid to merge the credit unions with the NCUA's encouragement. *Id.* Ms. Young alleges that Energy One told Pearl District that the NCUA would be investigating Ms. Young for fraud and that her law, insurance, and securities licenses "could be [in] jeopardy" as a result. *Id.* Energy One stated that the only alternative was to secure Ms. Young's loans with her investment properties, or Energy One would walk away and allow Pearl District to be liquidated. *Id.* at 7-8. In separate discussions with Ms. Young, Energy One allegedly represented that "if Ms. Young wanted to avoid issues with her law, insurance, and securities licenses, she had to move her personal loans to Energy One and collateralize" them with her real estate assets. *Id.* at 8. When Ms. Young expressed that she was only interested in collateralizing the loan coming due in May 2023, Energy One stated that the June 2037 loan was being called due early "at its recommendation" and that refinancing and collateralization against Ms. Young's real property assets was the only path forward. *Id.*

Ms. Young alleges she "felt strongarmed and bullied" by Energy One. *Id.* at 9. She agreed to refinance her outstanding loans in two term notes due in June 2026 and June 2028, for a total loan amount of $1.205 million. *Id.* These loans were secured by sixteen properties owned by RJY Properties in Tulsa and Oklahoma City and a life insurance policy on Ms. Young. *Id.* at 10. Although Energy One allegedly told Ms. Young that she would be allowed to substitute collateral to accommodate her business needs, Ms. Young alleges she has been refused or ignored by Energy One every time she requests to substitute collateral, harming her business. *Id.* at 11-12.

Ms. Young and her companies have asserted equitable claims to rescind the agreement and quiet title to her properties and have pleaded legal

3

No. 24-cv-504

claims for fraud, breach of fiduciary duty, and extortion. Dkt. 2 at 12-18. The Court will address each in turn.

III

Ms. Young sues to rescind the collateralization agreement and quiet title to her properties. She gives three theories to support her recission claim: (1) the agreement to collateralize the new loans with her real estate portfolio was made under duress, (2) Energy One defrauded her to obtain her consent to collateralization, and (3) Ms. Young received no consideration for her agreement to collateralize the loans. Dkt. 2 at 12-14. Energy One responds that Ms. Young has not stated a claim for recission of contract on any of her theories and, consequently, may not quiet title. Dkt. 17 at 3-9.

A

For a contract to be rescindable for duress, a party must show that their consent was induced "under circumstances depriving one of the exercise of a free will." *Centric Corp. v. Morrison-Knudsen Co.*, 1986 OK 83, ¶ 9, 731 P.2d 411, 415. This requires "a wrongful act" that was "sufficiently coercive to cause the [plaintiff], faced with no reasonable alternative, to succumb to the [defendant's] pressure." *Id.* ¶ 12, 731 P.2d at 415-16.

An act need not be "illegal" to be "wrongful" or "unlawful." *Id.* ¶ 23, 731 P.2d at 419. It need only "present[] an unreasonable alternative to the weaker party within a bargaining situation, . . . even if there was a legal right to perform the threatened act." What makes a coercer's conduct wrongful is that "the threatened party was forced to accept the contract." *Id.* The act must leave "no adequate legal remedy nor reasonable alternative available." *Id.* ¶ 14, 731 P.2d at 416.

For a wrongful act to deprive a party of free will, it must (a) be initiated by the coercing party, (b) be committed with knowledge of the impact it would have, (c) be made for the purpose of and be reasonably adequate to

4

No. 24-cv-504

secure coercion, and (d) result in the coercing party obtaining undue advantage over the other party. *Id.*

Ms. Young alleges that Energy One engaged in a wrongful and coercive act when it accused her of defrauding Pearl District and "stated that if Ms. Young wanted to avoid issues with her law, insurance, and securities licenses, she had to move her personal loans to Energy One and collateralize" them with her commercial property. Dkt. 2 at 8. Energy One responds that Ms. Young had the option of refinancing with any other bank or credit union. Dkt. 17 at 8.

Ms. Young does not plead that her loans from Pearl District were regulatorily sound. Dkt. 2. Instead, she pleads facts that indicate there were significant regulatory problems with her loans that could have resulted in negative consequences for both her and Pearl District. Most notably, her complaint states that the NCUA intervened and threatened Pearl District with liquidation because Pearl District had made construction loans to Ms. Young in violation of its charter and with insufficient collateral. *Id.* at 6-7. Although Ms. Young characterizes Energy One's statements that she might face regulatory issues with potential impact on her licenses as threats that Energy One would seek to harm her livelihood, she does not plead sufficient facts to indicate that these were improper threats and not mere warnings about the potential consequences of an NCUA investigation. Warning a counterparty that their current course of action could lead to regulatory consequences, which might lead to professional consequences, does not "present[] an unreasonable alternative to the weaker party within a bargaining situation." *Centric*, 1986 OK 83 ¶ 14, 731 P.2d at 416.

Ms. Young does not allege that Energy One was in some way in control of the NCUA's investigation that could result in issues with her licenses. She at most alleges that Energy One "implied" that failing to refinance with them would lead to a loss of faith in her and her employer in Texas. Dkt. 2 at 7-8.

5

But her allegations do not make clear if these implied consequences were a threat to do some improper action or merely a warning about the potential consequences of a regulatory investigation into her borrowing practices. Without more, these statements cannot form the basis to clear the high bar to plead a recission claim.

More troublesome is Energy One's alleged statement that Ms. Young had to refinance her loans with them, and not with another bank or credit union, to avoid potential issues with her licenses. Dkt. 2 at 7-8. But Ms. Young does not plead enough facts to allege that the statements "if Ms. Young wanted to avoid issues with her law, insurance, and securities licenses, she had to move her personal loans to Energy One and collateralize" or that the situation "could be a jeopardy to Ms. Young's licenses" were actual and meaningful threats that were "reasonably adequate to secure coercion." *Id.* at 8; *Centric*, 1986 OK 83 ¶ 14, 731 P.2d at 416. Ms. Young does not allege that she had another bank or financial institution waiting in the wings, and that Energy One stated that she would be subject to regulatory investigation if she went with another institution as an alternative financier. At most, Ms. Young alleges that Energy One presented itself as her only option to resolve her situation. Dkt. 2 at 7-8.

Presenting yourself as the only option is hard bargaining, but it does not, without more, rise to create a duress claim. Although it is unclear exactly when the negotiations between Ms. Young and Energy One occurred, Ms. Young has not pleaded facts that she had insufficient time or ability to find another lender. Contrasting her situation with the cases cited in *Centric*, Ms. Young was not in a position where "without immediate payment [she] would be forced into bankruptcy." 1986 OK 83 ¶ 19, 731 P.2d at 418 (citing *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 23 (Alaska 1978)). Nor was she facing "imminent" bankruptcy or other issues if Energy One did not provide her refinancing. *Id.* ¶ 21, 731 P.2d at 419 (citing *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1160 (1984)).

6

No. 24-cv-504

Even accepting Ms. Young's representation in her response that negotiations began in January 2023, she had months to find another lender who would allow her to pay off her old, regulatorily unsound debt and replace it with something legal because the refinancing agreement would not be finalized until June 30, 2023. Dkt. 24 at 7; Dkt. 2 at 10. Statements by Energy One that it was her only option could not have been "reasonably adequate to secure coercion" when there were months for Ms. Young to find alternative financing. *Centric*, 1986 OK 83 ¶ 14, 731 P.2d at 416.

Ms. Young does not plead facts sufficient to allege that any statements by Energy One could be "reasonably adequate to secure coercion." *Id.* At most, her pleadings demonstrate that Energy One was engaged in hard bargaining and, as part of its negotiation strategy, pointed out the regulatory risk Ms. Young faced due to her allegedly improper loans. Ms. Young has thus not pleaded facts sufficiently to support her claim for recission for duress.

B

Ms. Young also alleges fraud by Energy One during the negotiation process and argues that she can rescind the contract on the basis of fraudulent inducement. Dkt. 2 at 12. To state a claim for fraud, Ms. Young must allege facts that, if true, show (a) Energy One made a false material misrepresentation which (b) Energy One either knew to be false or made recklessly or without knowledge of the truth, (c) with intent that Ms. Young act upon it, and (d) which Ms. Young relied upon to her own detriment. *T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc.*, No. 21-cv-153-GKF-JFJ, 2022 WL 16842907, at *5 (N.D. Okla. Jan. 21, 2022) (citing *Bowman v. Presley*, 2009 OK 48, ¶ 8, 212 P.3d 1210, 1217). Fraud must be pleaded with particularity, and "must specify the source, time, place, manner and content of allegedly fraudulent representations, and the consequences thereof." *Id.*, at *7.

Ms. Young does not plead her fraudulent inducement claim with sufficient detail. Although she alleges that Energy One falsely stated that her

7

fixed-term fifteen-year note with Pearl District was called due early to induce her to secure the new loan with her properties, she does not plead the date, place, or manner of the allegedly false statements. Dkt. 2 at 7-8. She attributes the statements to Stephen McNabb and Mike Addison of Energy One, but this alone does not get her over the line. *Id.* at 8. In her response, she points to allegations that the false statements began in "approximately January 2023," but those allegations refer to Energy One's communications *with Pearl District*, not Ms. Young. Dkt. 2 at 7; Dkt. 24 at 7. Because Ms. Young did not plead her fraud claims with particularity, her fraud theory is insufficient to support her claim for recission.

C

Ms. Young also alleges that the terms of the new loan fail for want of consideration. Dkt. 2 at 13. For a contract to fail for want of consideration, there must be no actual exchange of value—one party must simply be giving the other something without getting anything in return. *Burkhardt v. City of Enid*, 1989 OK 45, ¶ 12, 771 P.2d 608, 611.

Ms. Young alleges that "[t]he entirety of the transaction amount[ed] to Plaintiffs paying closing costs to have the [loans] transferred to Energy One under worse terms with significantly more collateral," and so she received no value from the transaction. Dkt. 2 at 13. But the loans were not merely "transferred[;]" rather, Energy One issued funds to pay off a loan that was of questionable legality and issued Ms. Young a new loan in its place. Dkt. 2 at 9-10. Ms. Young received a new loan from a new creditor who was not faced with the threat of liquidation. This has at least some value and, therefore, does not fail for lack of consideration. Ms. Young's assertion that the transaction lacked consideration does not support her recission claim.

Because Ms. Young has not pleaded facts sufficiently to support a claim for recission on any of her three theories, the Court grants Energy One's motion to dismiss this claim.

No. 24-cv-504

D

Energy One argues that because Ms. Young has not properly pleaded facts to state a recission of contract claim, her suit to quiet title on the properties collateralizing her loans with Energy One must fail. Dkt. 17 at 9. Ms. Young has not stated a recission of contract claim on any of her theories. She therefore cannot seek to quiet title to her properties. The Court grants Energy One's motion to dismiss her quiet title claim.

IV

Energy One next argues that Ms. Young has not stated a claim for common-law fraud. Dkt. 17 at 4-7. Ms. Young's fraud claim is substantially identical to her recission for fraud claim, discussed in section III(B), *supra*. For the same reasons the Court found her allegations wanting for recission for fraud, she fails to state a claim for common-law fraud. The Court grants Energy One's motion to dismiss Ms. Young's fraud claim.

V

Energy One next argues that Ms. Young has not pleaded sufficient facts to state a claim that Energy One violated a fiduciary duty owed to her because Ms. Young was not a member of Energy One during negotiations or when the loan was issued. Dkt. 17 at 9-10. Ms. Young responds that she must have been a member when the loan was issued because a credit union is not permitted to make loans to non-members. Dkt. 24 at 9. But her complaint does not state that she was a member at the time the loan was made or that Energy One owed a fiduciary duty during the refinancing negotiations. Instead, her complaint states that "Ms. Young was *now* a member of Energy One" only once the merger was completed on October 18, 2023, months after she refinanced the debt on June 30, 2023. Dkt. 2 at 10 (emphasis added). Even if Ms. Young were a member, she still does not state a claim for relief. Lenders do not have fiduciary relationships to their debtors or customers unless they have "expressly agreed in writing" to take on fiduciary duties. *Parrish v. Arvest Bank*, 717 F. App'x 756, 763 (10th Cir. 2017) (quoting Okla. Stat. tit. 6, §

9

No. 24-cv-504

425). Ms. Young does not allege the existence of any express, written agreements between her and Energy One that would create a fiduciary duty.

Ms. Young argues only that 12 C.F.R. § 701.4, which outlines the authority and responsibility of officers of federal credit unions, creates a fiduciary relationship between a credit union its members as individuals.[2] The only part of § 701.4 that could create a duty is § 701.4(b)(1), which requires a director of a credit union to "[c]arry out his or her duties . . . in a manner such director reasonably believes to be in the best interests of the membership of the Federal credit union as a whole." Ms. Young argues that this section "creates a fiduciary relationship between each director and the credit union membership." Dkt. 2 at 16.

But the fact that a director owes a fiduciary duty to the credit union's membership as a whole does not mean he also owes specific fiduciary duties to a single member. To read that into the regulation ignores the plain text of the phrase "membership . . . as a whole." § 701.4(b)(1). Ms. Young's interpretation would stretch the text of the regulation to upset settled law that lenders do not owe their borrowers fiduciary duties, and would lead to incoherent results—for example, that a credit union might owe simultaneous fiduciary duties to an individual member who seeks to take out a loan with insufficient collateral and to the membership as a whole who seeks to ensure all loans are appropriately secured.

Ms. Young has not alleged the existence of a fiduciary duty owed to her by Energy One, regardless of the question of her membership, and the

---

[2] Energy One argues that § 701.4 does not imply a cause of action. But as a threshold question, § 701.4 must create a fiduciary duty between Energy One and Ms. Young to be relevant. The Court finds that it does not create a fiduciary duty to individual members of a credit union and thus need not reach the question of whether it implies a cause of action.

No. 24-cv-504

Court will dismiss this claim.[3] But Energy One moves to dismiss the claim with prejudice, arguing Ms. Young cannot state any set of facts that would permit her to state a claim for breach of a fiduciary duty. The Court disagrees. Although she cannot allege that § 701.4 creates a fiduciary duty, fiduciary duties may arise whenever "a confidence" of one party is subject to "domination and influence [by] the other." *Lowrance v. Patton*, 1985 OK 95, ¶ 17, 710 P.2d 108, 111. Fiduciary relationships can arise from any number of actions. The Court therefore will not preclude Ms. Young from stating facts to allege a fiduciary relationship with either Energy One or Pearl District by dismissing this count with prejudice.

## VI

Last, Energy One argues that Ms. Young may not sue for extortion, as extortion is a purely criminal claim with no private right of action. Dkt. 17 at 11-12. Ms. Young does not mention the extortion claim in her response. Dkt. 24. Extortion is a federal criminal offense, and there is no private right of action for it. *Samzelius v. Bank of Am.*, No. C-12-03295 EDL, 2012 WL 12949683, at *9 (N.D. Cal. Oct. 9, 2012). The Court grants Energy One's motion to dismiss Ms. Young's extortion claim.

## VII

For the reasons set forth above, Energy One's motion to dismiss is granted without prejudice. The Plaintiffs may amend their complaint by December 23, 2025. If Plaintiffs do not amend by the stated date, the Court will enter final judgment in favor of Energy One.

---

[3] In her response, Ms. Young argues that Pearl District owed her a fiduciary duty when it advised her to collateralize the debt with Energy One, and that Energy One, as the successor in interest to Pearl District, is liable for that duty. Dkt. 24 at 10-11. But she has not pleaded any specific facts about what advice she received from Pearl District's directors, or what fiduciary duty Pearl District owed to her in the negotiations. Dkt. 2.

11

No. 24-cv-504

DATED this 3rd day of December 2025.

_____
JOHN D. RUSSELL
*United States District Judge*