# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cv-504-JDR-JFJ

RJY Properties, LLC; RJY Construction, LLC; Robbi Jill Young,

*Plaintiffs*,

*versus*

Energy One Federal Credit Union; Pearl District Federal Credit Union; Unknown Members of the Board of Directors of Energy One Federal Credit Union; Unknown Members of the Board of Directors of Pearl District Federal Credit Union,

*Defendants*.

## OPINION AND ORDER

Plaintiffs Robbi Jill Young and her two real-estate investment companies, RJY Properties, LLC and RJY Construction, LLC, allege that Defendant Energy One Federal Credit Union wrongfully forced her to refinance two loans she held with Defendant Pearl District Credit Union. Dkt. 2 at 12-17.[1] Two motions are pending. First, Energy One moved to dismiss Plaintiffs' first amended complaint. Dkt. 31. Plaintiffs then sought leave to file a second amended complaint. Dkt. 35. The Court grants Plaintiffs' motion to amend their claims for tortious interference with contract, negligence and gross negligence, recission for duress, quiet title, and civil conspiracy and denies the motion to amend all other claims. The Court directs Plaintiffs to file a second

[1] All citations use CM/ECF pagination.

amended complaint including only the surviving claims by September 21, 2026.

## I[2]

Ms. Young is an attorney from Texas who owns two real-estate investment companies, RJY Properties and RJY Construction. Dkt. 35-2 at 2-3. These companies own properties in Tulsa and Oklahoma City. *Id.* at 16. To acquire and develop those properties, Ms. Young borrowed $1.2 million from Pearl District in two loans in May of 2022. *Id.* at 6-7. The first loan was due on May 5, 2023; the second on June 30, 2037. *Id.*

Pearl District's president and board of directors approved both loans, which were secured by life insurance policies on Ms. Young as part of "a common lending practice for Pearl District." *Id.* at 7. After Pearl District issued the loans, a third-party auditor conducted an audit of Pearl District's loan portfolio. *Id.* at 8. The auditor questioned Pearl District's president about the two loans but did not find any wrongdoing. *Id.* at 8-9. Later, the National Credit Union Administration audited Pearl District and determined that the two loans to Ms. Young were not permitted by Pearl District's charter. *Id.* at 9.

Energy One reached out to Pearl District in a bid to merge the credit unions. *Id.* at 9-10. During merger negotiations, Pearl District disclosed Ms. Young's loans and provided Energy One with her private financial information. *Id.* at 10-11. Plaintiffs allege that Pearl District's officers and board members then "abdicated their authority" to Energy One and permitted Energy One's CEO, Steve McNabb, to administer Pearl District before the merger concluded. *Id.* at 10.

---

[2] The following section summarizes the allegations as stated in Ms. Young's proposed second amended complaint [Dkt. 35-2]. The Court accepts these facts as true solely for purposes of this order. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

Mr. McNabb contacted Ms. Young and told her that her loans were illegal, that Pearl District would not renew the loans, and that they had to be "rewritten and collateralized by Ms. Young's Oklahoma real estate portfolio" before their maturity date. *Id.* at 11-12. Ms. Young responded that she would not be able to find a new lender in that period. *Id.* at 12. Mr. McNabb replied that the first loan was already in default "on his recommendation" and the second would be accelerated and called due early "at his direction." *Id.*

When Ms. Young responded that refinancing both loans would be impossible, Mr. McNabb offered to have Energy One refinance the loans and secure them against Ms. Young's real estate portfolio, but he warned that consequences of a failure to refinance, including bankruptcy, "would be problematic for [Ms. Young's] licenses and employment." *Id.* Ms. Young determined that there was no option but to refinance with Energy One. *Id.* at 14-15.

During the refinancing negotiation, Energy One accused Ms. Young of committing fraud and deceiving Pearl District. *Id.* at 14. Energy One stated that "if Ms. Young wanted to avoid issues with her law, insurance, and securities licenses, she had to move her personal loans to Energy One and collateralize" them with her real estate assets. *Id.* It also informed Ms. Young that her friend and Pearl District's CEO, Linda Curtis, was under a fraud investigation, and "the best way for Ms. Young to help her was to refinance both personal loans with Energy One and agree to collateralize them against properties owned by her other companies." *Id.*

Ms. Young believed that she would lose her law, securities, and insurance licenses unless she refinanced her loans, and saw "no reasonable alternative" to doing so. *Id.* at 14-15. She refinanced the loans with Energy One in two term notes for a total loan amount of $1.2 million. *Id.* at 15-16. These loans were secured by sixteen properties owned by RJY Properties in Tulsa and Oklahoma City and a life insurance policy on Ms. Young. *Id.*

The new loans carried higher interest rates than the original loans, and Ms. Young's payments increased by $6,651.71 a month. *Id.* at 18. Because Energy One has refused collateral substitutions, Ms. Young has been forced to sell 19 of her 26 properties. *Id.* at 18-19.

II

Defendants have moved to dismiss Plaintiffs' first amended complaint. Dkt. 31. Plaintiffs moved to amend their complaint. Dkt. 35. Defendants oppose Plaintiffs' amendment as being unduly delayed and futile. Dkt. 36.

Plaintiffs' motion for leave to amend is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which permits a party to file an amended complaint with either leave of the Court or the opposing party's written consent. Fed. R. Civ. P. 15. Although Energy One objects to Plaintiffs' proposed amendment, Rule 15(a)(2) states that the Court "should freely give leave [to amend] when justice so requires." But Rule 15(a)(2) does not require the Court to accept all amendments. It is within the Court's discretion to deny Plaintiffs leave to amend based on, among other reasons, "undue delay," "failure to cure deficiencies by amendments previously allowed," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend may be denied for futility and failure to cure deficiencies even when an amendment restates a claim in the original complaint. *LaFleur v. Teen Help*, 342 F.3d 1145, 1154 (10th Cir. 2003).

The Court will address the motion to amend, treating Defendants' response in much the same way that it would a motion to dismiss. The Court will accept allegations in the proposed second amended complaint as true, viewed in the light most favorable to the non-moving party, and will consider whether the amended allegations, if true, would state a claim for relief. The Court will deny leave to amend any futile proposed claims.

Energy One argues that Plaintiffs' motion to amend should be denied because (a) the amendment is based on information that Plaintiffs "knew or

should have known" when they filed their previous complaint, (b) the proposed amended complaint fails to appropriately identify the parties at fault for each claim in violation of Federal Rule of Civil Procedure 8, and that (c) Plaintiffs' claims are all futile for the reasons stated in Defendants' motion to dismiss. Dkt. 36. The Court concludes that Plaintiffs' motion is timely and comports with Rule 8. The Court agrees that portions of the proposed amended complaint would be futile and grants the motion to amend [Dkt. 35] only the claims for tortious interference with contractual relations, negligence, recission for duress, quiet title, and civil conspiracy.

A

Energy One first argues that the motion to amend is untimely because Plaintiffs "either knew or should have known" the new factual allegations well before they requested to amend. Dkt. 36 at 4. Defendants argue that Ms. Young "failed to exercise reasonable diligence in contacting [Ms. Curtis]" in the seventeen months since the filing of her original complaint. *Id.* at 5. Plaintiffs respond that they sought the documents from Ms. Curtis after receipt of Energy One's motion to dismiss because those "nonpublic corporate governance records" were responsive to that motion. Dkt. 37 at 4. Plaintiffs argue they had "no legal or practical means of obtaining them prior to their voluntary disclosure." *Id.*

The Court agrees with Plaintiffs. A plaintiff is not required to turn over every rock in search of evidence before starting the discovery process. Plaintiffs obtained documents informing them of new facts in the course of discovery, and there is no evidence that those documents could have been obtained from a reasonably diligent search of records accessible to Plaintiffs. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) (noting plaintiffs are not required "to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery"). Procedurally, the parties are still in the early stages of this lawsuit, and the Court will

not hold a delay in seeking voluntary information from a third party against Plaintiffs because it implicates no prejudice or surprise against Energy One.

B

Second, Energy One argues that Plaintiffs' proposed amended complaint is a "shotgun pleading" prohibited by Rule 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Energy One argues that Plaintiffs' complaint fails to adequately specify which facts apply to which claims and which parties. Dkt. 36 at 6 (citing *Fawley v. Lucero*, No. 22-2091, 2023 WL 2487323, at *2 (10th Cir. Mar. 14, 2023)).

Plaintiffs' proposed amended complaint satisfies Rule 8. It is entirely unlike the complaint at issue in *Fawley*, where the court "could not discern, either from the amended complaint or from the numerous filings that accompanied it, what statutes Mr. Fawley was relying on for relief, what role the named defendants played, or even what relief he sought." 2023 WL 2487323, at *2. Plaintiffs' claims are clear, specify which defendants they allege are liable for which claims, and clearly state the roles the defendants played. Dkt. 34-2. Plaintiffs' proposed amended complaint is not a shotgun pleading and does not violate Rule 8.

C

Finally, Energy One argues that Plaintiffs' motion to amend should be denied as futile. Dkt. 36 at 7-14. Amendment is futile when the amended complaint "would be subject to dismissal" under Rule 12(b)(6). *Mountain View Pharmacy v. Abbott Lab'ys*, 630 F.2d 1383, 1389 (10th Cir. 1980). To resolve Plaintiffs' motion to amend, the Court must determine whether Plaintiffs' proposed pleading sets forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In other words, the Court must determine whether, taking all well-pleaded allegations as true, the complaint provides a "reason to believe that [Plaintiffs] has a reasonable likelihood of mustering factual support for [their] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).[3]

1

Energy One argues that Plaintiffs' proposed pleading fails to state a claim for fraud or fraudulent inducement. Dkt. 36 at 6. To state a claim for fraud, the proposed pleading must allege that (1) a Defendant made a false material misrepresentation which (2) the Defendant either knew to be false or made recklessly or without knowledge of the truth, (3) with intent that Ms. Young act upon it, and (4) upon which Ms. Young relied to her own detriment. *T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc.*, No. 21-cv-153-GKF-JFJ, 2022 WL 16842907, at *5 (N.D. Okla. Jan. 21, 2022) (citing *Bowman v. Presley*, 2009 OK 48, ¶ 8, 212 P.3d 1210, 1217). Fraud must be pleaded with particularity, and "must specify the source, time, place, manner and content of allegedly fraudulent representations, and the consequences thereof." *Id.* at *7.

Plaintiffs allege two separate fraudulent acts. First, they allege that "Pearl District . . . represented that Ms. Young's personal and loan information would be kept confidential and would not be disclosed or used except as permitted by law and for her benefit." Dkt. 35-2 at 19-20. But Plaintiffs do not allege that Pearl District either knew the statement to be false or made it recklessly or without knowledge of the truth, nor do they specify the source,

[3] Energy One's arguments largely restate those raised in its pending motion to dismiss. Dkt. 36 at 7-13; Dkt. 31. Plaintiffs respond that "futility warrants denial of leave to amend only where the proposed amendment would be subject to dismissal as a matter of law." Dkt. 37 at 7 (citing *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)). But *Jefferson County* requires this Court to "consider the sufficiency of the [amended] claims." 175 F.3d at 859 (emphasis added). The Court must therefore apply the Rule 12(b)(6) standard.

time, place, manner, or content of Pearl District's allegedly fraudulent representations. *T.D. Williamson*, 2022 WL 16842907, at *7.

Second, Plaintiffs allege that "Energy One, directly and through coordinated conduct with Pearl District, represented by omission and implication that its communications with Ms. Young were independent, voluntary lending discussions untainted by improper access to her confidential information" and "failed to disclose material facts." Dkt. 35-2 at 19-20. Although it is true that concealment of material facts can constitute a basis for fraud, for a party to conceal "there must be something more than mere silence, or a mere failure to disclose known facts." *Gibson v. Mendenhall*, 1950 OK 276, ¶ 10, 224 P.2d 251, 254. Plaintiffs do not allege anything further than Energy One's and Pearl District's silence about third-party access to her confidential information. And Plaintiffs do not "specify the source, time, place, manner, and content of [Pearl District's or Energy One's] allegedly fraudulent representations" or allege that they were known to be false at the time. *T.D. Williamson*, 2022 WL 16842907, at *7.

Plaintiffs did not plead sufficient facts to state a claim for fraud or fraudulent inducement, and they did not plead their claims with particularity as required by Rule 9. Plaintiffs' fraud claims are subject to dismissal. Amendment is thus futile.

2

Energy One argues that Plaintiffs' proposed amended complaint fails to establish a claim for breach of fiduciary duty. Dkt. 36 at 7-8. Plaintiffs assert two theories to support their claim: first, that 12 C.F.R. § 701.4 "required the officers and directors of Energy One to uphold duties of care in guiding Ms. Young," and second, that Pearl District "owed fiduciary duties to the credit union and, under these facts, special duties to a member-borrower whose confidential financial information [it] controlled." Dkt. 35-2 at 21-22.

The Court has already addressed and rejected Plaintiffs' first theory in its prior order to dismiss. Section 701.4 creates a fiduciary duty between the directors of a credit union and the credit union membership as a whole. It does not create a particularized fiduciary duty to individual credit union members. Dkt. 26 at 9-11. Plaintiffs cannot state a claim for relief on this basis.

For Plaintiffs' second theory, mere possession of another's confidential financial information is not sufficient to create a fiduciary relationship. Under Oklahoma law, a lender does not have a fiduciary relationship with its debtors or customers unless the parties have expressly agreed in writing to have that relationship. Okla. Stat. tit. 6, § 425. Accepting Plaintiffs' theory that Pearl District had a fiduciary responsibility over Ms. Young's confidential financial information would mean that, despite Okla. Stat. tit. 6, § 425's broad prohibition on fiduciary duties, every lender in the state who has control over a debtor's financial information would owe that debtor a fiduciary duty. The Court does not read § 425 as permitting the everyday business of lending to subject a creditor to a fiduciary responsibility with its debtors. Doing so would run directly counter to the Legislature's words. Ms. Young's proposed amended complaint does not state a claim for breach of any cognizable fiduciary duty and is therefore futile.

3

Next, Energy One argues that Plaintiffs' proposed pleading does not state a claim for tortious interference with contract. Dkt. 36 at 7-8. To state this claim, the Plaintiffs must allege facts to establish that Defendants interfered with "an existing contractual or business right," that "such interference was malicious and wrongful," that "the interference was neither justified, privileged nor excusable," and that the interference proximately caused damages to the Plaintiffs. *Wilspec Techs., Inc. v. DunAn Holding Grp., Co.*, 2009 OK 12, ¶ 15, 204 P.3d 69, 74.

Energy One argues that Plaintiffs cannot show that it interfered with Ms. Young's loans by placing them in default because Ms. Young was already in breach of those loans. Dkt. 31 at 18. But this is a factual argument relying on evidence from outside the four corners of the complaint—namely, the alleged preexisting breach of the agreement. The Court cannot consider extrinsic evidence of Ms. Young's alleged breach when determining whether she has stated a claim for relief, and so this argument does not support futility.

Energy One also argues that Plaintiffs failed to allege that Energy One's "primary intent" was to interfere with Ms. Young's contractual rights. Dkt. 31 at 19 (citing *Morrow Dev. Corp. v. Am. Bank & Tr. Co.*, 1994 OK 26, ¶ 10, 875 P.2d 411, 417). In *Morrow*, the Oklahoma Supreme Court held that a party's justifiable efforts to protect its own economic interests rendered a request for additional security privileged and not improper because the intent of the interference was for self-protection. *Id.* In this case, Plaintiffs have alleged that Energy One induced Pearl District to declare her loans in default for its own benefit. Dkt. 35-2 at 16-17.

*Morrow*'s procedural posture was far afield from this case; it considered a denial of a motion for judgment notwithstanding the verdict, not a motion to dismiss. 1994 OK ¶ 5, 875 P.2d at 414. It held that because the plaintiff was not able to show evidence of improper intent at trial, judgment notwithstanding the verdict should have been granted. *Id.* ¶ 1, 875 P.2d at 412. Improper intent is a factual determination best dealt with at summary judgment or trial, not on a motion to dismiss. Considering only the four corners of the complaint, Plaintiffs have sufficiently alleged that Energy One had the primary intent of interfering with Ms. Young's contractual rights, and Energy One's fact-based defense could not support dismissal. This claim is thus not futile.

4

Energy One argues that Plaintiffs' proposed amended complaint does not state a claim for "Wrongful Declaration of Default, Coercion, and Forced Refinancing." Dkt. 37 at 8. Plaintiffs admit that this is not a viable separate cause of action. Dkt. 32 at 6. But the proposed amended complaint includes the heading "E. Wrongful Declaration of Default, Coercion, and Forced Refinancing" in the same style as Plaintiffs' substantive claims. Dkt. 35-2 at 26. For avoidance of doubt, the Court concludes, based on the parties' statements, that amendment to include this claim would be futile.

5

Energy One next argues that Plaintiffs have not stated a claim for violations of the Oklahoma Consumer Protection Act. The OCPA "provides an aggrieved consumer a private right of action against a person who engages in an unlawful practice." *U.S. Bank Nat'l Ass'n v. Hill*, 2023 OK 86, ¶ 22, 540 P.3d 1, 10. But "[a]ctions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States" are exempt from the OCPA. Okla. Stat. tit. 15, § 754.2. Energy One is a credit union subject to regulation by the National Credit Union Administration. Pearl District was likewise regulated by the NCUA. Pearl District's loans to Ms. Young were regulated by both the NCUA and the Federal Credit Union Act, 12 U.S.C. § 1757 *et seq.* Plaintiffs' claims therefore fall under the exemption in Okla. Stat. tit. 15, § 754.2. The OCPA thus does not apply to the facts of this case. Plaintiffs' proposed amended complaint is futile on this count.

6

Next, Energy One asserts that Plaintiffs' claims for negligence and gross negligence[4] are futile because Energy One and Pearl District only owed

[4] Under Oklahoma law, claims for negligence and gross negligence differ "only in degree." *Mike v. Pro. Clinical Lab'y, Inc.*, 781 F. Supp. 2d 1192, 1204 n.8 (N.D. Okla.).

Ms. Young contractual duties and not a duty of care. Dkt. 36 at 10. Plaintiffs respond that "Oklahoma law recognizes that a special relationship and corresponding duty of care arise when a lender goes beyond arm's-length trading and undertakes to advise or guide a borrower's financial decisions." Dkt. 32 at 11 (citing *Rodgers v. Tecumseh Bank*, 1988 OK 36, ¶ 12, 756 P.2d 1223, 1226). But Oklahoma law does not extend "an implied duty to deal fairly and act in good faith" to every commercial lending transaction because "[t]o impose tort liability on a bank for every breach of contract would only serve to chill commercial transactions." *Rodgers*, 1988 OK ¶ 16, 756 P.2d at 1227. But even so, "gross recklessness or wanton negligence on behalf of a party to a contract *may* call for an application of the theory of tortious breach of contract." *Id.* (emphasis added).

*Rodgers* found no implied duty in an ordinary commercial lending agreement with "arms-length negotiati[on]" and "relatively equal bargaining capacity." *Id.* ¶ 15, 756 P.2d at 1226. But Plaintiffs' complaint alleges that Energy One and Pearl District placed Ms. Young and her companies on a short timeline, put Ms. Young's licenses on the line, denied her prior notice, and gave her only a 40-day window to refinance over a million dollars' worth of loans. Dkt. 35-2 at 12-16. Assuming all of Plaintiffs' allegations are true, as the Court must when considering a motion to dismiss, a factfinder could determine that Defendants' actions went so far beyond the mine-run of ordinary commercial lending transactions that it created a duty of care, particularly in light of the difference in "bargaining capacity" between them. *Rodgers*, 1988 OK ¶ 15, 756 P.2d at 1226. This is ultimately a factual question that cannot be resolved on a motion to dismiss. Consequently, amendment to include this claim is not futile.

7

Next, Energy One states that Plaintiffs' amended pleading does not state a claim under the Oklahoma Antitrust Reform Act. Dkt. 36 at 10-11. To state a claim under the OARA, a plaintiff must show that the defendant

engaged in anticompetitive conduct constituting an "unreasonable restraint of trade." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1548 (10th Cir. 1996). That anticompetitive conduct "must have an effect greater than its effect upon the plaintiff's business" and thus a plaintiff "must show that the challenged conduct adversely impacts competition in general." *Id.*

The Court agrees with Defendants that Plaintiffs' proposed amended complaint does not assert allegations to indicate that Ms. Young tried to seek or obtain third-party financing, that she was restrained from doing so, or that Defendants' actions had an anticompetitive impact greater than the scope of Plaintiffs' business. Plaintiffs' proposed amended complaint does not state an OARA claim upon which relief could be granted.

8

Next, Energy One argues that Plaintiffs' amended pleading does not state a claim for recission of the loan agreement or to quiet title. The Court disagrees. Plaintiffs argue recission is appropriate because Ms. Young's consent was obtained through fraudulent inducement, she was coerced into the agreement, and the loan agreements were procured through conduct that violated Oklahoma statutory law and public policy. Dkt. 35-2 at 35.[5] Ms. Young therefore asserts that her consent is voidable.

Plaintiff's coercion argument passes muster. For a contract to be rescindable for duress, a party must show that its consent was induced "under circumstances depriving one of the exercise of a free will." *Centric Corp. v. Morrison-Knudsen Co.*, 1986 OK 83, ¶ 9, 731 P.2d 411, 415. This requires "a wrongful act" that was "sufficiently coercive to cause the [plaintiff], faced

---

[5] The Court has already addressed why Plaintiffs' fraud and state statutory law claims are futile, *see* Sections II-C-1, II-C-5 and II-C-7, *supra*, and neither Plaintiffs' proposed amended complaint nor their response to the motion to dismiss make it clear what public policy they allege supports their recission theory. Dkts. 32, 35-2. Consequently, the Court only considers Plaintiffs' coercion argument.

with no reasonable alternative, to succumb to the [defendant's] pressure." *Id.* ¶ 12, 731 P.2d at 415-16.

An act need not be "illegal" to be "wrongful" or "unlawful." *Id.* ¶ 23, 731 P.2d at 419. It need only "present[] an unreasonable alternative to the weaker party within a bargaining situation, . . . even if there was a legal right to perform the threatened act." What makes a coercer's conduct wrongful is that "the threatened party was forced to accept the contract." *Id.* The act must leave "no adequate legal remedy nor reasonable alternative available." *Id.* ¶ 14, 731 P.2d at 416. For a wrongful act to deprive a party of free will, it must (a) be initiated by the coercing party, (b) be committed with knowledge of the impact it would have, (c) be made for the purpose of and be reasonably adequate to secure coercion, and (d) result in the coercing party obtaining undue advantage over the other party. *Id.*

Plaintiffs allege that Energy One reviewed Ms. Young's financial information, induced Pearl District to call her loans due early and classify one as in default, and "design[ed] refinancing terms that effectively left Ms. Young with no practical choice but to refinance with Energy One." Dkt. 35-2 at 15. Taking all of these facts as true, a reasonable factfinder could find that Energy One intentionally left Ms. Young without a reasonable alternative or adequate legal remedy, and consequently that the new contract was formed under duress. This claim is not futile, and, consequently, neither is Plaintiffs' suit to quiet title.

9

Next, Energy One argues that Plaintiffs' claim for civil conspiracy is futile, arguing that without an underlying unlawful act, there cannot be a conspiracy. Dkt. 36 at 12 (citing *Gaylord Entertainment v. Thompson*, 1998 OK 30, ¶¶ 39-43, 958 P.2d 128, 148-49). But *Gaylord Entertainment* dealt with a situation where the civil conspiracy claim was based on a defamation claim that was dismissed because of the protections granted by the First Amendment.

1998 OK ¶ 42, 958 P.2d at 148-49. But Plaintiffs have levied several claims which can survive a motion to dismiss. *See* Sections II-C-3, II-C-6, and II-C-8, *supra*. At the very least, tortious interference with contract alleges an unlawful act. *Niemeyer v. U.S. Fid. & Guar. Co.*, 1990 OK 32, ¶ 4, 789 P.2d 1318, 1320 (holding that "[a]ny malicious interference . . . is an unlawful act and an actionable wrong"). Plaintiffs' claim for civil conspiracy is not futile.

10

Last, Energy One argues that Plaintiffs cannot assert a claim for a declaratory judgment. But as this Court has recently held, a court may not dismiss a request for declaratory judgment under Rule 12(b)(6) because "the only issue on a motion [to] dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded." *Fralix v. Indep. Sch. Dist. No. 1 of Tulsa Cnty., Okla.*, No. 25-cv-633-JDR-SH, 2026 WL 1694514, at *9 (N.D. Okla. June 11, 2026). Ms. Young's request for declaratory judgment is a part of her prayer for relief, not a separate legal claim, and is thus not subject to a motion to dismiss. Ms. Young may amend her complaint to include the request for declaratory judgment.

III

Ms. Young's motion to amend [Dkt. 35] her claims for tortious interference, negligence, recission for duress, quiet title, and civil conspiracy is granted. The Court denies the motion to amend all other claims. Although only Energy One (which is Pearl District's legal successor) has responded to the claims, the opinions set forth in this opinion apply with equal force of the unserved parties. Ms. Young is directed to file a new complaint containing only the surviving claims against all Defendants by September 21, 2026. Once Plaintiffs have done so, the Court will deny the pending motion to dismiss as moot; if they do not file a new complaint by that date the Court will resume consideration of the pending motion to dismiss.

DATED this 1st day of September 2026.

JOHN D. RUSSELL
*United States District Judge*